Good morning, Your Honor. Thank you very much. If it may please the Court, my name is Joseph Clapp. I represent Sarah Rodriguez, who worked as a recruiter for Akima Infrastructure Services until she was let go during protected family and medical leave. And if I may, I'd like to reserve about 3 minutes for my rebuttal. Keep your eye on the clock, and we'll try to help you. Your Honor, thank you very much. This case, I think, has a very focused issue, and that is whether a reasonable jury could conclude, based on the evidence that was presented, that she was replaced. And I think the matter is very simple in a lot of ways, because we have three strands of evidence, I think, which supports that, which would support a jury in believing that. First, of course, is we have direct evidence. She was told by her supervisor, when they were hiring the replacement, that we're going to hire a replacement for you, we're going to hire a replacement for you in May, so that you have like three weeks to train the replacement. That's direct evidence that she was being replaced by Mr. Menig. I think there's a couple other evidence, lines of evidence, which corroborate that. One is simply the timing. The timing that she was, you know, she was going on a leave in June of 2015, and the replacement was hired three weeks beforehand. Again, for the purpose so that she would, the overlap was simply for the purpose that she could train him. And that temporal coincidence between her leaving and his hiring, I think, supports the fact that he was a replacement for her. With a different job title, correct? Yes, a different job title. And undisputed that at least some of his duties were different than hers, correct? One only. One only, and that is that for two, three hours on some weeks, not all weeks, she assisted when there was a new hire orientation. And he was paid substantially less than her, correct? That is exactly correct, which I believe is exactly, reflects two things. Number one, they couldn't hire somebody earlier in October of 2014 at the rate they wanted to, and they had to pay her a premium. And that's the motivation, why they want to keep him instead of her. Now they could hire, they found somebody, they could hire for a lower rate, and so when they replaced him, they wanted to keep him rather than bring her back and pay her the higher rate. Now, counsel, I understand your theory for the case, because there's no dispute by Ms. Rodriguez that Akima suffered a pretty devastating blow from a business standpoint, correct? I won't, I don't know if I'd agree it's devastating, but I'll grant your point, yes. A severe loss of revenue. Well, a loss of revenue, yes. I can see that. And so what this case really boils down to, and correct me if I'm wrong, is whether Mr. Mennick has the same duties and responsibilities that Ms. Rodriguez had, or whether he was really hired into a more junior position. I think that's exactly correct. And to be a little bit more subtle. So if that's the case, do we need an exact overlap of their duties and responsibilities? Well, I don't believe so. I believe a jury should be empowered to decide whether they're substantially the same. I don't believe that you can evade the law by simply saying, well, hire a replacement and have him take out the trash or add one tiny little duty, or subtract one kind of tiny little duty, and thereby say, well, they're substantially different jobs. I think a jury can say, look at this, and say, look, you know, this is not two jobs. They're pretending that these are two different jobs. Look at the timing. You know, there was one person in the job up until September of 2014. He left. They then say they created a brand new job that lasted for about seven months and didn't fill the first job. But there's corroboration for that. I'm sorry for what? There's corroboration for Akima's explanation that they were attempting to expand the responsibilities of Ms. Rodriguez's predecessor, who I think is Mr. Andrade, because he was doing recruiting jobs, recruiting responsibilities only, correct? Correct. Ms. Rodriguez was hired on. Correct. Akima stated that their intention was to have Ms. Rodriguez not only do all of Mr. Andrade's duties, but also take some of Ms. Miller's work, so that frees her up essentially to deal with other matters in terms of client relations and so forth. And? Is there any dispute to that in the record, that her — that Ms. Rodriguez's role was actually expanded beyond what Mr. Andrade was handling? There's — the evidence is quite clear, I believe. Well, if we believe her testimony, which I think we should, then she didn't accept any — she did not have any other jobs. She only had his job. There's only one job. It was doing technical recruiting. All these other jobs they say that, you know, are these added responsibilities, she says she never had. She says the job description is not accurate. She says that the only jobs she was ever doing were the jobs that any recruiter would be doing, including her successor. So we didn't have two jobs. Did she also say she never saw the job description while she was working? Yes. They never — which, in my view, provides some evidence that there maybe wasn't a job description, because typically you would think that somebody would see their job description. This was not created until — or at least not produced until this lawsuit. But whether she saw — she didn't see it. But is it accurate? Well, she says no. She says she was not doing the duties that they say she was doing. Now, if you believe that — When Mr. Menick and Ms. Rodriguez were working together, were they doing the same thing, or did they have different jobs? No, they were doing exactly the same thing. So he was just kind of following her around and learning the job. Is that what happened? Yes. I mean, she wasn't the only person who was teaching him the job, but yes. So there's no evidence that he was doing something different than what she had been doing while she was on the job? I don't think there's any evidence whatsoever that he did anything other than what she did. I thought that Ms. Rodriguez also participated in some employment-related activities, such as orientation for new hires, but Mr. Menick never did that. That's not — excuse me. Yes, that is the one difference. That is the only — So there is a difference. Yes. Yes. Yes. Absolutely. One difference. And you're just saying that that one difference isn't material? What I'm saying, I guess, to be slightly more precise, is I think a jury should be the ones to decide that issue. You know, if there's one tiny little difference in the jobs, are they different jobs? I think a jury should be impaneled to decide that issue. Now, if the employer had eliminated this position, which is what they say they did in this reorganization a month or six weeks before, then your client would have no claim. Is that right? I'm not quite sure I follow. Could I ask it again? If their action had been before her rights to bring this claim, to use a term, vested, if they had acted a bit before, she would have had no claim, correct? I do think that's correct. I think that there was a period of time when she was not protected by the Family Medical Leave Act. She was protected at the time that they let her go, however. So, I guess that's what I would, you know, that's the way I look at this case, Your Honor, is it's a question of whether there's one job or two jobs, primarily, and a question whether or not the jury should decide whether or not there was one job or two jobs. It's very difficult to understand where if there's two jobs, why it was, you know, unfilled for seven months, and coincidentally, that's the seven months or so that she was actually in her second job. It seems much more plausible to me that there was one job from the beginning of time, was a recruiter, and that, you know, when they realized that they could hire somebody for $31 rather than $38, they said, gee, let's keep him and not her. There are no other questions, Your Honor. I think I'll reserve the rest of my time. Very well. Thank you, Your Honor. Good morning. May it please the Court? Good morning. Greg Iskander for the appellees, Acoma LLC and Acoma Infrastructure Services. Your Honor, the law is not in dispute in this case. We agree as to the burden, as to the defense is, and truly the material facts that were before the district court were not in dispute. What's really happening is that the appellant is arguing that she views the facts differently and she believes that a jury might agree with her as to her views of the facts. But very importantly, she provided some testimony in opposition to summary judgment as to what she believed, and that was not supported by the evidence. So her view of the case is that she replaced David Andrade, and her view was that Peter Menig was supposed to be covering, was only hired to cover for her while she was on leave, and that they were doing the same duties. But that wasn't the evidence that was, but that was just her speculation and uncorroborated testimony. Didn't she testify that she had received an email that said that he was being hired to replace her? So that was her test, that was her declaration. So why is that speculation? Because one, it wasn't admissible. First of all, it wasn't admissible evidence. There was no email. The email does not exist. The email is not in the record at all. And secondly, it would have been because the email didn't exist. It was just her saying there was an email. Well, it wouldn't violate the best evidence rule if the email, if there was a credible explanation offered at trial as to why there was no longer a copy of the email, correct? But there was, setting aside hearsay also, but there was no explanation of why there was no email. But also, Your Honor, her testimony or her declaration was that when I was being recruited in October of 2014, Andrade tells me, hey, they're looking for somebody to replace me because I'm leaving. The fact of the matter is, is he didn't leave until January, right? So he was in a junior recruiter position. She's hired in October of 2014. Andrade actually leaves January 2015. He's a junior recruiter. Peter Menig is hired as a junior recruiter a few months later in May of 2015. And at the end of the day, they are different positions. She was a salaried, exempt employee. She had a different title. She had a different job description, whether she saw it or not. And the expectations for her were different. Mr. Menig was hired as a junior recruiter, which was Mr. Andrade's position. And it was an hourly, non-exempt position with very little business view of it. And she admits in testimony she doesn't know why her position was replaced. This is her speculation. Why doesn't the fact that her testimony, that she in essence performed all of the same responsibility as Mr. Menig, except for very limited time spent in these orientation sessions for new hires, why doesn't that create a sufficient question of fact to have this case go to the jury? Well, two reasons, Your Honor. One is that the clear — there's no dispute that she had a different title, she was paid, she was different pay structure, and that the job description had these additional duties. In addition — so in one respect, her view of what her duties were really shouldn't trump what the company's expectations of her duties were. Certainly, the company expected her to do these additional duties. And the fact that in the first six to eight months of her employment that she didn't — she felt she wasn't doing it or that she hadn't gotten to it yet, I don't think changes the fact that she was in this different position and that it was a different position. But the testimony looked at in the light most favorable to the non-moving party is that we were all in practice doing the same job. Why couldn't, based on the evidence in the light most favorable to the non-moving party, couldn't a jury conclude that there was no job change and that Mr. Menig simply replaced Ms. Rodrigues? Because the undisputed and credible evidence that was before the district judge was also the testimony — well, first of all, of course, the general manager, Terry Reichart, as well as the H.R. manager, Deborah Moreau, and Jennifer Miller, who — Well, sure, but then that's where it gets to the issue of, well, should we put this before the jury and let the jury decide who to believe? Mr. Reichart put in the declaration in connection with summary judgment that basically said she doesn't have the same position. She was a recruiter, yes, and so to some extent she performed the same duties that Mr. Menig has. But in addition to that, she was an employment specialist and we hired her for that, and she took on employment-side responsibilities. And I think his declaration even describes some of the employment-side responsibilities that she had, like determination of prevailing wages, position and salary leveling, preparation of justification packets, new hire orientation. So you've got that one side of it, and then the business reasons why Akima may have decided to eliminate her position. But then on the other hand, you've got her declaration saying, well, of all those employment-side responsibilities that Mr. Reichart said I had, I didn't really do any of them except for occasionally new hire orientation. So does that set up a he-said, she-said situation that then puts this case before the jury? So they can decide whether to look at the salary and the employment descriptions or look at the actual duties and responsibilities that the employees engaged in on the ground. I don't think it does, Your Honor, for a couple of reasons. One is, first of all, she does admit that she did have additional duties, and although she limits it to one duty, the fact of the matter is she did have a duty that a junior recruiter wouldn't have. Secondly, take Mr. Menig's testimony, so it's not just a he-said, she-said The record shows that he was hired as a permanent employee. He wasn't hired as a temporary So in the government contracting world, they call it extended term or short term. He was hired as an extended term employee. It's illogical that they would have hired him as a permanent employee after, remember, Mr. Andrade, his position is still there when Ms. Rodriguez is hired into this employment specialist position. Mr. Andrade leaves, it opens the junior recruiter position, Mr. Menig is hired as a permanent employee to fill that position. I thought he was hired as a short term employee or something. He was not. He was hired as an extended term employee. And he testified, and he's a neutral third party, he's got no dog in this fight. No one told me I was hired to cover for her while she was on leave. No one told me I was hired as a temporary employee. Counsel, why wouldn't a jury be entitled to infer from your client's economic problems as a result of Lawrence Livermore changing its practices that they simply decided this was an opportunity to save $7 or $8 an hour and simply call it a restructuring, whereas in fact it was just a way to save some money because of the economic travails? Why couldn't the jury justifiably make that inference from the evidence? Well, because I think as a matter of law it wouldn't matter. And I think that is a key point when, you know, Judge Nguyen mentioned, doesn't this boil down to whether or not they wanted to keep him cheaper? I mean, exactly your point, Your Honor. Let's just assume for a moment that's true. Let's just assume that, let's assume for a moment that they both had the same position and that the company, it's undisputed that they had to restructure and they had to reduce a position, and they chose him because he was cheaper than her. Exactly your point. That would not violate the FMLA as a matter of law. Under an interference theory, and this was in the briefs also, pretext doesn't matter, intent doesn't matter. The question is, was there a legitimate business reason? Was the position eliminated? So let's just say they had both exactly the same position. If they chose to eliminate her position versus somebody else's, that doesn't create a violation of the FMLA under the interference theory. Intent and pretext and motive are irrelevant. There is no dispute in this case that a position, that her position was eliminated. Based on her interference theory claim, she's not entitled to restoration if her position was eliminated. So sure, they chose to keep him and his position because he was cheaper, and they had employees that can do her employment duties, whether she was doing them or not. They knew, okay, well, the HR manager, Deborah Morrow, can do it. The employment manager, Jennifer Miller, can do it. And our new junior recruiter can do the recruiting duties. So we don't need her anymore, and it's going to save us money. That, as a matter of law, doesn't violate the FMLA. And so, no, a jury, that should not be sent to the jury. Well, but again, counsel, as you know very well as an experienced lawyer, we're in summary judgment right now. And in all of these cases that we get before our court, we get the same story. The appellant says, you know, this ought to go to the jury. And the other side says, no, no, no, you don't need to go to the jury. There are uncontested facts here, and they're all that are essential to decide the case. Don't we still struggle, even taking your point that pretext and intent don't matter under the FMLA? Don't we still have some very essential points under the FMLA aspect of it that are controversial? You know, true pretext doesn't matter, but she says that these were her roles. They were the same. She understood that he was taking her place. You vigorously dispute that. But as my colleague has pointed out, and as you know, under summary judgment, we credit the nonmoving party. And when you do that in this case, don't we get to the situation where you may win hands down, but doesn't this have to go to the jury to decide the case? Your Honor, I don't believe so, because even to controvert the material facts, there has to be admissible evidence beyond her mere speculation. And, you know, for example, Your Honor, in the Yashchenko v. Harris case, which was before the Fourth Circuit, in that case, which was an interference claim under the FMLA, employer eliminated the position, and what plaintiff argued was essentially the same thing, that a jury could find that the elimination lacked legitimacy. And the court there said, but the position was eliminated. And that's just, again, that's undisputed in this case, that the position was eliminated. I'll be sure I understand. From your perspective, you're saying that the evidence that Ms. Rodriguez has put in is, for the most part here, saying inadmissible. And so the company has put in its evidence about its financial distress and its problems. It admits that if it hired this other guy for less money, that's cool. We still have the issue, though, of whether she, under the FMLA, that it's designed to protect people, in this case, who go out for pregnancy. If you understand your position, you would say, well, the FMLA is not going to really help anybody as long as you have this business condition. So does it get down to, from your perspective, that she simply doesn't have admissible evidence to counter evidence? Is that what you're saying? Yes, that is part of it. The other part of it is this isn't a situation where, well, can't any employer then just get rid of a job and now somebody under the FMLA has no protections. The answer to that is no, because, one, certainly, and again, it's undisputed that there was a need to reduce staffing because of what happened with the lab. But a person who takes FMLA leave has other protections, because if it was truly protectural and they really wanted to get rid of her because she took FMLA leave or because she was pregnant, taking maternity leave, then she could have a discrimination claim. Then she can show pretext, she can show intent. And, of course, she admitted that that wasn't here, that they were looking forward to her coming to return, it was a genuine. And very importantly here, too, also, is keep in mind that, and as Your Honor pointed out, at her FMLA leave, she was not eligible until October 7, 2015. They made this decision. This all happened in June, July, August. There's documentations, there's charts, there's graphs, there's memos showing why we need to reduce this position. They made the decision before she's eligible for FMLA leave. And, you know, maybe no good deed goes unpunished. What they said was, well, we're not going to screw her, so even though we're eliminating this position and we've made it, go ahead and take your FMLA leave and then we'll, and then, so you don't lose your benefits. But at the time they made the decision, she was not eligible for FMLA leave. And I don't think, I think had she remained employed, had she come back from her leave, they would have made the same decision to eliminate a position because of what happened at the lab. It was an intervening event. They weren't aware of it at the time. And her job most, would have been eliminated either way. And again, I do think it's important, the fact that Peter Menig was not hired. I mean, she says she believes he was hired to replace her, but that's not what the evidence in the record was. The evidence in the record was he was hired as a permanent employee to fill this position. So she was told to train him? Well, that's not unreasonable. I mean, a recruiter's coming in, she's told to train him. And again, there's plenty of case law that says the fact that your position gets handled by other people doesn't mean that the position was eliminated. I mean, the fact that they're training each other, he's helping her with duties, other people are helping her with duties, doesn't mean that ultimately they didn't decide to eliminate that position. So you're saying that the decision to eliminate her position was made in September, and then she was converted to FMLA leave in October, and then told October 23rd to get the timing correct? Correct. They granted her leave effective October 7th. They actually issued her the paperwork September 25th. So on September 25th, they sent her the FMLA paperwork saying you've requested leave, we're going to grant it effective October 7th once you're eligible. She was supposed to return to work November 1st. They informed her on October 23rd. But the evidence in the record shows that the lab informed the general manager on June, in June of 2015, they started doing the analysis of the conversions July, August, and all the memos and all that were prepared in September. Other questions by my colleague? No, thank you. Thank you. So, you have some rebuttal time, counsel. I'm sorry. Thank you, Your Honor. I'm not sure I have a lot to add, Your Honor, but I'll You don't have to. An old rule is if you don't have anything to add, don't add it. That's what I was taught. So I'll just leave a very bit. He seems to indicate that she's speculating. And I think there's a difference between speculating and drawing reasonable inferences from timing, for example. And I don't think it's speculation when she's actually told directly by her supervisor that she's being replaced, we're hiring a replacement for her. I don't believe that's speculation. Was Mr. Mednick hired on as a permanent employee? Pardon me? Was Mr. Mednick hired on as a permanent employee? I believe so. Counsel, would you help me with this? Sure. The issue seems to be, are there material facts in dispute that govern the outcome of this case where you would have the benefit as the non-moving party? Your opposing counsel suggests that there are no such material disputes and that to the degree there are any, the law makes it clear that the facts are irrelevant. Would you tell us, please, what you believe are the materially contradicted elements of the testimony of both parties that were before the district judge that you think would lead to a conclusion in your client's favor? I'd be happy to, Your Honor. I believe the material fact at issue, the general material fact at issue, is whether or not she was replaced or whether her job was eliminated. I believe it's disputed whether or not it was replaced. She has direct evidence, again, from her supervisor, that they're hiring a replacement for her. I think there's evidence both from the fact that a coincidence in time, from the time they hire him, and from the fact that their theory that there's two different cases, two different jobs entirely, is implausible based upon the fact that there was no overlap. There was never two jobs except for three weeks of time when Mr. Menig was being replaced. I think every single duty that they were looking functionally... You said Menig was being replaced. You meant Andrade? I guess what I meant was Rodriguez was being replaced by Menig. Thanks for correcting me. I appreciate it. Every single job duty that they say she performed that was in addition to a recruiter's duty, she says she did not do. She never did it. It was not her job, and I can list them if you want that's in the evidence. Whatever you think we should know that are the material issues, because your opponent has been very skillful, frankly, in indicating what portions of the issue are strictly law-based, and suggesting that there is little material dispute. There may be a little factual dispute, but it's not material. So I'm asking you to tell us what are the material disputes that you think carry the day for your client. They say that one of her duties was to supervise and direct staff. She says that's not true. She never did that. They say that one of her duties was what they call position leveling. She says she never did that. They say that one of their positions, one of her additional duties, was what's called salary leveling. She says she did not do that. They say another duty was perform desk audit for reclassifications. She says she never did that. She says another one is position classification. She says she didn't do that. They say another one is determination of prevailing wages. She says she did do that, but also Mr. Menig did that, because that's a basic recruiter function. They say that another duty she did was justification packets. She says, yes, I did do that, and so did Mr. Menig. That was a basic function of the job. All these jobs, all these are disputes, whether or not she did them or whether or not both she and Mr. Menig did them. And those are the fundamental facts, I believe, which are in dispute, which have to be resolved to see whether or not this is essentially the same job or not. That's the bottom line. The point you've made is unless you know the answer to those questions, you don't know whether Mr. Menig replaced her or had a different job. Exactly. Essentially. Exactly. Is that right? There are no other questions. I think I'll submit on that, Your Honor. Very well. Thank you both, counsel, for your arguments. We appreciate it. The case just argued is submitted. Thank you, Your Honor.
judges: M. Smith, Nguyen, Bennett